The Chester Traction Company and The Union Railway Company of Chester, Pa., *v.* The Philadelphia, Wilmington & Baltimore Railroad Co., Appellant.

*Railroads—Street railways—Crossings—Equity—Preliminary injunction—Practice, S. C.*

On a bill in equity by a street railway company against a railroad company to restrain interference with a grade crossing proposed to be constructed by the complainant and to prescribe the manner of the construction of said crossing, the court will not grant a preliminary injunction, inasmuch as such an injunction would not tend to preserve the status of the parties pending litigation, but to destroy it.

On appeal to the Supreme Court in such case, the proceedings under the decree of the court below will be restrained until final hearing; but if the crossing has been completed, the Supreme Court may not interfere with the operation of the street railway until the full disposition of the case by final decree.

Argued Feb. 11, 1896. Appeal, No. 423, Jan. T., 1895, by defendant, from decree of C. P. Delaware Co., March T., 1895, No. 5, on bill in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Decree modified.

Bill in equity to restrain interference with a proposed grade crossing.

The complainant averred that it was authorized to construct a line of street railway on Welsh street in the city of Chester, and to cross the tracks of the defendant's railroad. The bill prayed (1) that an injunction be issued, preliminary until hearing and perpetual thereafter, restraining the said defendant, its officers, employees and agents from resisting the construction or interfering with the maintenance of the said street railway or trolley wire on Welsh street, crossing its said tracks as

aforesaid; (2) that the court provide by its decree for the manner of construction of the crossing of the said railway over the said railroad, and for its future maintenance, under the provisions of the second section of the act of June 19, 1871, P. L. 1360, entitled, "An act relating to legal proceedings by or against corporations," and (3) such other and further relief as may be meet in the premises.

The defendant filed an answer averring that the proposed crossing by the plaintiff company was not demanded by any requirement of public convenience, but was simply to enable the plaintiff to more conveniently operate its lines; that such crossing would be dangerous to persons and property, and denied that the plaintiff was clothed with full legal power and authority to construct and maintain its railway and trolley wires over the tracks of the defendant at grade, and averred that the resistance of the defendant to such construction was legal.

The court entered the following decree:

And now, to wit, February 16, 1895, the above cause came on to be heard, and after hearing it is ordered, adjudged and decreed:

1. That the plaintiffs, or either of them shall have the right to proceed to construct and maintain a single track of railway at grade over the tracks of the defendant, where the same cross Welsh street, in the city of Chester, in said county, and shall have the right to string their wires over said crossing at an elevation of at least twenty-two feet above the top of the rails of the defendant's road.

2. The crossing frogs shall be procured by the plaintiffs, subject to the approval of the defendant, and shall be set by the defendant.

3. When any car propelled by electricity shall approach the tracks of the defendant's road, it shall be stopped at least twenty feet from the safety gates, whether the said gates are up or down, and the conductor shall proceed upon the railroad track and ascertain by looking up and down said road whether any car, engine or other vehicle is approaching. If the track is free from danger, he may give the signal to cross, otherwise, said electric car shall not attempt to cross said track.

4. The cost of said crossing frogs, setting of same, main-

tenance thereof, and the cost of any change of construction in the form of the safety gates, are reserved until final decree as to which of the parties shall pay the same, or in what proportion the same shall be borne, and either party has leave to move to amend, modify, alter or change this decree as necessity for public safety may demand, or as new inventions for the prevention of accident may be adopted.

5. Let injunction issue as prayed for in the bill upon filing a bond by the plaintiffs in the sum of $5,000, and with the Delaware County Trust, Safe Deposit & Title Insurance Co. as security, which is hereby approved.*

*Error assigned* was above decree, quoting it.

*J. B. Hannum,* for appellant.

*W. B. Broomall,* for appellees.

PER CURIAM, March 9, 1896 :

This as it seems to us was not a case for a preliminary injunction. It did not tend to preserve the status of the parties pending the litigation, but to destroy it. In its character and effect it was final, for it gave to the plaintiff the right for which it contended in advance of the regular determination of that right. But the decree was made and the crossing has been

---

* The following statement was made in appellant's " History of the Case."

" On February 16, 1895, on motion of plaintiff for an injunction and decree as prayed for in the bill, a hearing was held at the office of the Honorable Thomas J. Clayton, in Chester, Pa. On this day the plaintiff appeared by its counsel, William B. Broomall, Esq., and its president, George B. Lindsay, Esq., and the defendant appeared by counsel. S. C. Long, an engineer of said defendant company, was present as a witness. There were no depositions taken or read at said hearing, nor were any witnesses heard, although the defendant's counsel offered the said S. C. Long as a witness, but the court declined and refused to hear him. After the reading of the bill and answer, and without hearing any testimony, the court made the decree complained of in this case. On March 6, 1895, the defendant took this appeal. The bill was not sworn to, and there was no injunction affidavit filed, and the record as filed in the Supreme Court in this case does not show any such affidavit. There was no opportunity given to file exceptions to the decree."

completed under its authority. The authority to make the crossing is yet to be determined on final hearing. Upon that subject we express no opinion. It will be time enough to consider it when regularly presented. Meantime there is no reason apparent why we should disturb the operation of the plaintiff's road by reversing the order appealed from until the subject can be fully and intelligently disposed of by a final decree. It is for this reason that we affirm the action of the court below. This must not be taken as an expression of opinion upon the question of the plaintiff's right to cross at grade, but as due to disinclination to disturb the present status until that question may be settled by a final decree.

PER CURIAM, March 23, 1896 :

And now March 23, 1896, the decree made in this case on the 9th day of March, 1896, having been made under the erroneous impression that the crossing in question had been actually completed is now modified by adding thereto the following :

"Proceedings under the decree of the court below are restrained until final hearing, and the status as it was at the date of the decree hereby modified is to remain undisturbed."